Eric D. Barton (Utah Bar No. 6481)
ebarton@wcllp.com
WAGSTAFF & CARTMELL LLP
4740 Grand Ave. Suite 300
Kansas City, MO 64112
Tel: 816-701-1100
**Attorney for Plaintiffs**

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BRIAN HAZEL and**<br>**LAURIN DESSEAUX, individually and**<br>**on behalf of all similarly situated persons,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**AVIACODE, INC.,**<br><br>     **Defendant.** | **Case No. 2:17-cv-01065**<br><br>AMENDED CLASS AND COLLECTIVE<br>ACTION COMPLAINT<br><br>Judge: Hon. Bruce S. Jenkins |

Plaintiffs Brian Hazel and Laurin Desseaux, individually and on behalf of all similarly situated employees, for their Amended Complaint against Defendant Aviacode, Inc., allege as follows:

1.     Defendant Aviacode, Inc. ("Defendant" or "Aviacode") provides medical coding services to hospitals and doctors across the country.

2.     Plaintiffs and the members of the classes they seek to represent are individuals who have been hired by Defendant as independent contractor-medical coders ("Medical Coders") to review patient documentation and determine the appropriate diagnostic and/or procedural codes that correspond to the medical records ("medical coding").

3.      Despite classifying them as independent contractors, Defendant regulates significant aspects of its Medical Coders' work, as described herein, such that Aviacode is properly considered their employer.

4.      Plaintiffs bring this lawsuit as an "opt-in" collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and as a "opt-out" class action under Utah's Payment of Wages Act ("UPWA"), Utah Code Annotated ("U.C.A.") § 34-28-1 *et seq.*, to recover unpaid wages, unpaid overtime compensation, unreimbursed business expenses, statutory penalties, attorneys' fees, and other monies owed to themselves and all similarly situated Medical Coders employed by Defendant.

<u>**Jurisdiction and Venue**</u>

5.      Federal law governs the right to overtime pay in Utah. The FLSA authorizes court actions by private parties to recover damages for violation of its provisions. Jurisdiction over Plaintiffs' FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question). Diversity jurisdiction also exists pursuant to 28 U.S.C. § 1332 since the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      The UPWA authorizes court action by parties to recover damages for violation of its wage provisions. Jurisdiction over Plaintiffs' UPWA claims is based on U.C.A. § 34-28-9.5 and 28 U.S.C. § 1367 (pendent claims).

7.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendant maintains its principal place of business within this District, Defendant provides medical coding

services in this District, and a substantial part of the events giving rise to the claims herein occurred in this District.

8.      Further, the purported Independent Contractor Coding Agreement Defendant required Plaintiffs and its other Medical Coders to sign contains both a Utah choice of law clause and Salt Lake City, Utah choice of venue clause.

## Parties

9.      Defendant Aviacode, Inc. is a Delaware corporation which maintains its principal place of business in Salt Lake City, Utah, which is located within this District. Aviacode makes its corporate policy decisions, and manages its Medical Coders, from its headquarters in Utah.

10.     Plaintiff Brian Hazel is a resident of Independence, Missouri. He has been employed by Defendant as a Medical Coder since approximately December 2013. Mr. Hazel's Consent to Become a Party Plaintiff under 29 U.S.C. § 216(b) was attached to the original Complaint.

11.     Plaintiff Laurin Desseaux is a resident of Denver, Colorado. He was employed by Defendant as a Medical Coder from approximately 2011 until December 26, 2017. Mr. Desseaux's Consent to Join form under 29 U.S.C. § 216(b) was filed on May 29, 2018. (Doc. 56-1).

## General Allegations

12.     Defendant provides medical coding services for hospitals, surgical centers, physician groups, and doctors across the country.

13.     Defendant describes itself as an industry leader in technology-enabled medical coding services.

14.     On its website, Defendant claims to serve 88,000 physicians in 61+ specialties, coding 590,962 charts per month. According to Aviacode, this equates to more than $50 billion in medical coding revenue billed.

15.     Defendant's motto is "We do your medical coding."

16.     Defendant employs Medical Coders (in "Remote Contract Positions"), including Plaintiffs, and places them on projects with its clients, which may last weeks, months, or years.

17.     Medical Coders, including Plaintiffs, sign long-term Agreements with Defendant. After a project is completed, Aviacode places them on new projects.

18.     Medical Coders, including Plaintiffs, perform services directly within the usual course of the business of Defendant, which is to provide medical coding services for its clients.

19.     Defendant's website repeatedly references "our" Medical Coders.

20.     Defendant also lists Medical Coders on its "Careers with Aviacode" page.

21.     Defendant improperly classifies its Medical Coders, including Plaintiffs, as independent contractors.

22.     Under the law, Defendant's Medical Coders are properly considered employees of Aviacode for several reasons including, but not limited to, the following:

   a. Defendant exerts substantial control over its Medical Coders by requiring them to, among other things:

      i.   comply with specific coding guidelines,

      ii.  meet Aviacode's turnaround time requirements,

      iii. maintain 95% coding accuracy measured under Defendant's standards,

      iv.  maintain required certifications,

     v.  complete Aviacode's required training,

     vi.  comply with Defendant's computer readiness requirements,

     vii.  use Aviacode's coding software and applications, and

     viii.  agree to Defendant's policies, including, confidentiality, nondisclosure, and non-solicitation policies;

b.  Defendant sets the manner, rate, and timing by which Medical Coders are paid;

c.  Medical Coders are economically dependent on Defendant;

d.  Medical Coders' earnings do not depend upon their judgment or initiative, but on Aviacode's need for their work;

e.  Medical Coders do not share in the profits of the business or control the factors that affect the volume of medical coding orders, such as advertising, quality of others' work, or auditing;

f.  Medical Coders do not undertake risks associated with an independent business and therefore cannot suffer a business loss other than a loss in earnings;

g.  Defendant's investment into the coding applications and other technology that it provides to Medical Coders and which are necessary for Medical Coders to perform their work far outweighs Medical Coders' individual investments into the other instrumentalities necessary to perform their work for Aviacode;

h.  Medical Coders' work for Defendant is not for a pre-determined time;

    i.    Defendant maintains the right to hire Medical Coders and the right to terminate Medical Coders when a project is complete or with written notice;

    j.    Although Medical Coders are required to have certain skills, they do not exercise them in any independent fashion in their employment with Defendant;

    k.    Medical Coders provide a service to Defendant, because without their coding, Aviacode would not be a viable business;

    l.    Defendant's Medical Coders are essential to Aviacode's business because Defendant would not exist without the money generated by its Medical Coders' services; and

    m.    Defendant's Medical Coders are not engaged in a occupation or business distinct from Aviacode, as Defendant is in the medical coding business and markets itself as such.

23.    By misclassifying its Medical Coders as independent contractors, Defendant does not comply with the FLSA and/or UPWA.

24.    Specifically, Defendant does not:

    a.    pay its Medical Coders for all the time they work;

    b.    pay Medical Coders overtime compensation;

    c.    reimburse Medical Coders for business expenses;

    d.    timely pay Medical Coders their full wages; or

    e.    keep accurate records of Medical Coders' time worked and wages earned.

6

25.     During relevant times, Plaintiffs and the other Medical Coders regularly worked over 40 hours per workweek.

26.     Defendant's job descriptions suggest Medical Coders will work 40+ hours with no maximum hours.

27.     Starting in or around October 2014, Plaintiff Hazel averaged approximately 55 hours of work per workweek.

28.     This includes several hours of unpaid time per workweek.

29.     Starting in approximately early 2013, Plaintiff Desseaux averaged approximately 55 hours of work per workweek.

30.     This included several hours of unpaid time per workweek.

31.     During relevant times, Defendant required Plaintiffs and the other Medical Coders to complete administrative tasks but did not pay them for this work.

32.     During relevant times, Defendant required Plaintiffs and the other Medical Coders to correct edit/denial errors but did not pay them for this work.

33.     During relevant times, Defendant required Plaintiffs and the other Medical Coders to complete training modules but did not pay them for this work.

34.     Individual training modules take approximately 1-2 hour per week to complete, and a full session of training modules can last between 4-6 weeks.

35.     During relevant times, Defendant paid Plaintiff Hazel a piece rate of approximately $1.25 per chart (for a regular rate of approximately $15.00-$17.00 per hour) or an hourly rate of approximately $22.00 per hour.

36.     During relevant times, Plaintiff Desseaux estimates Defendants paid him a piece rate of approximately $00.37 per chart (for a regular rate of approximately $15-$16 per hour).

37.     During relevant times, Defendant only paid Plaintiffs for time spent coding.

38.     During relevant times, Defendant did not pay Plaintiffs an overtime premium for time worked over 40 hours per workweek.

39.     Defendant paid its other Medical Coders similarly.

40.     During relevant times, Defendant's Medical Coders, including Plaintiffs, incurred business expenses for the benefit of Aviacode that are not reimbursed.

41.     Medical Coders are required to purchase several items in order to work for Defendant, including, but not limited to, coding books, computers that meet minimum specified capabilities, internet services, and wireless services.

42.     Defendant's Medical Coders must also purchase necessary office supplies since they work from home.

43.     Plaintiffs incurred approximately $75.00 - $200.00 in expenses per month for Defendant's benefit.

44.     Defendant's other Medical Coders were required to incur similar expenses.

45.     Defendant did not ask Plaintiffs or its other Medical Coders to track their expenses.

46.     During relevant times, Medical Coders were also required to pay Defendant's portion of their federal income tax, social security tax, and state and/or local tax.

47.     Plaintiff Hazel complained two times to Defendant about these policies, including to its Vice President of Coding, but these practices were not corrected.

48.     Plaintiff Desseaux complained at least two times to Defendant about the unfairness of the compensation he was receiving considering the amount of work he performed, but Defendant did not make any change.

49.     Defendant's other Medical Coders had similar experiences to those of Plaintiffs. They were subject to the same policies and incurred similar expenses.

50.     During relevant times, Defendant systematically failed to pay Plaintiffs and its Medical Coders for all time worked, including time spent performing administrative tasks, correcting edit/denial errors, and completing training modules.

51.     Defendant also systematically failed to pay Plaintiffs and its Medical Coders at a rate of one and one-half times their regular rate for time worked over 40 hours per workweek.

52.     Defendant further systematically failed to reimburse Plaintiffs and its Medical Coders for business expenses.

53.     As a result, Defendant systematically failed to timely pay Plaintiffs and its other Medical Coders their full wages and failed to keep accurate time and wage records.

54.     The net effect of Defendant's policies and practices is that Defendant willfully failed to pay required overtime compensation to Plaintiffs and its other Medical Coders in violation of the FLSA, and failed to pay them for all time worked, reimburse their expenses, timely pay their full wages, and keep accurate records under the UPWA.

## Class and Collective Action Allegations

55.     Plaintiffs bring Count I as an "opt-in" collective action claim on behalf of similarly situated Medical Coders employed by Defendant at any time within the last three years pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

56.     The FLSA claim may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

57.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendant's practice of failing to pay employees overtime compensation. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential plaintiffs may be notified of the pendency of this action via mail and/or email.

58.     Plaintiffs and all of Defendant's Medical Coders are similarly situated in that:

    a.   They have worked as Medical Coders for Defendant;

    b.   They have performed medical coding for Defendant's customers;

    c.   Defendant has classified them as independent contractors;

    d.   They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

    e.   They have been subject to the same policy of failing to pay overtime compensation for hours worked in excess of 40 per workweek.

59.     Plaintiffs bring Counts II-V as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and as Class Representatives of the following persons (the "Class"):

    All current and former Medical Coders employed by Defendant at any time during the three years preceding the filing of this Complaint.

60.     Counts II-V, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

61.     Plaintiffs' state law claims asserted in Counts II-V satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

62.     The Class sought in Count II satisfies the numerosity standard as it consists of at least one hundred persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

63.     Questions of fact and law common to the Class sought in Counts II-V predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation:

    a.  They have worked as Medical Coders for Defendant;

    b.  They have performed medical coding for Defendant's customers;

    c.  Defendant has classified them as independent contractors;

    d.  They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

    e.  They have been subject to the same policy of failing to pay for all time worked, failing to reimburse for business expenses, failing to timely pay full wages, and failing to keep accurate time and wage records.

64.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

65.     Plaintiffs' claims are typical of those of the Class sought in Counts II-V in that:

a. They have worked as Medical Coders for Defendant;

b. They have performed medical coding for Defendant's customers;

c. Defendant has classified them as independent contractors;

d. They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

e. They have been subject to the same policy of failing to pay for all time worked, failing to reimburse for business expenses, failing to timely pay full wages, and failing to keep accurate time and wage records.

66.     Plaintiffs are adequate representative of the Class sought in Counts II-V because they are members of that Class and their interests do not conflict with the interests of the members of the Class they seek to represent. The interests of the members of the Class sought in Counts II-V will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

67.     Maintenance of the claims asserted in Counts II-V as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

68.     It would be impracticable and undesirable for each member of the Class, sought in Counts II-V, who suffered harm, to bring a separate action. In addition, the maintenance of

separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### Count I: Violation of FLSA by Failing to Pay Overtime Compensation

69.     Plaintiffs reassert and re-allege the allegations set forth above.

70.     At all relevant times herein, Plaintiffs and all other similarly situated Medical Coders have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

71.     Defendant is an "employer," and Plaintiffs and all other similarly situated Medical Coders are "employees" under the FLSA. 29 U.S.C. § 203.

72.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations, but none of the exemptions apply to Plaintiffs or other similarly situated Medical Coders.

73.     The FLSA regulates, among other things, the payment of overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in production of goods for commerce, or employed in an enterprise engaged in commerce or in production of goods for commerce. 29 U.S.C. § 206(a).

74.     Defendant is subject to the FLSA's overtime requirements because it is an enterprise engaged in interstate commerce, and its Medical Coders are engaged in commerce.

75.     Under section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), employees are entitled to be compensated at a rate of one and one-half times the regular rate at which they are employed for hours worked in excess of 40 hours per workweek.

76.     When employees are paid on a piece-rate basis, overtime pay must be computed on the basis of the average hourly rate derived from such earnings, *i.e.*, total pay for workweek divided by total number of hours actually worked.

77.     As alleged herein, Defendant has suffered or permitted Plaintiffs and other Medical Coders to perform compensable work during overtime without providing them required overtime pay in that Defendant failed to compensate them for such work at a rate of at least one and one-half times their regular rate.

78.     Defendant knew or should have known that its pay policies, practices and methodology result in failure to pay Medical Coders overtime compensation.

79.     Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay overtime compensation to Plaintiffs and other similarly situated Medical Coders.

80.     Plaintiff and all similarly situated Medical Coders are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's Medical Coders.

81.     Plaintiffs and all similarly situated Medical Coders are entitled to damages equal to the mandated overtime compensation earned within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

82.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated Medical Coders are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation under 29 U.S.C. § 216(b).

Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiffs and all similarly situated Medical Coders are entitled to an award of prejudgment interest at the applicable legal rate.

83.     As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiffs and all similarly situated Medical Coders. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiffs and all similarly situated Medical Coders demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count II: Violation of UPWA by Failing to Pay for All Time Worked

84.     Plaintiffs reassert and re-allege the allegations set forth above.

85.     At all relevant times herein, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, be paid for all time worked. U.C.A. § 34-28-1 *et seq.*

86.     During all times relevant to this action, Defendant was an "employer" of Plaintiffs and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

87.     Under Utah law, an employer is required to pay its employees their full wages earned. U.C.A. §§ 34-28-2, 34-28-9.5.

88.     As alleged herein, Defendant has failed to pay its Medical Coders their full wages as required by the UPWA by failing to pay them for all time worked, including time performing administrative tasks, correcting edit/denial errors, and completing training modules.

89.     As alleged herein, Defendant has suffered or permitted Plaintiffs and other Medical Coders to perform this compensable work without pay.

90.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to pay full wages to Plaintiffs and the Class.

91.     Plaintiffs may file this claim without exhausting any administrative remedies since they are filing their claim on behalf of themselves and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

92.     Plaintiffs and the Class are entitled to actual damages; and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiffs and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3) and § 34-28-5; (3) costs of litigation and attorney's fees as provided by U.C.A. § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count III: Violation of UPWA by Failing to Reimburse Business Expenses

93.     Plaintiffs reassert and re-allege the allegations set forth above.

94.     At all relevant times herein, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, reimbursement for business expenses. U.C.A. § 34-28-1 *et seq.*

95.     During all times relevant to this action, Defendant was an "employer" of Plaintiffs and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

96.     Under Utah law, an employer may only deduct, withhold, or divert wages from employees under specific circumstances, none of which apply here.

97.     Further, an employer may not require an employee to rebate, refund, offset or return wages, except under specific circumstances which also do not apply here.

98.     As alleged herein, Defendant has deducted, withheld or diverted wages from its Medical Coders, and/or required them to rebate, refund, offset or return their wages, by failing to reimburse them for business expenses incurred to perform their job.

99.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to reimburse Plaintiffs and the Class for their business expenses.

100.    Plaintiffs may file this claim without exhausting any administrative remedies since they are filing this claim on behalf of themselves and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

101.    Plaintiffs and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiffs and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of litigation and attorney's fees as provided by U.C.A. § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count IV: Violation of UPWA by Failing to Timely Pay Full Wages**

102.     Plaintiffs reassert and re-allege the allegations set forth above.

103.     At all relevant times herein, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, timely receiving their full wages. U.C.A. § 34-28-1 *et seq.*

104.     During all times relevant to this action, Defendant was an "employer" of Plaintiffs and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

105.     Under Utah law, an employer is required to pay its employees all of their wages earned at regular intervals, at least twice per month. U.C.A. § 34-28-3.

106.     As alleged herein, Defendant has not timely paid its Medical Coders their full wages by failing to (1) pay them for all time worked, (2) pay them overtime compensation, and (3) reimburse them for business expenses.

107.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to timely pay Plaintiffs and the Class their earned wages.

108.     Plaintiffs may file this claim without exhausting any administrative remedies since they are filing this claim on behalf of themselves and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

109.     Plaintiffs and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiffs and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of

litigation and attorney's fees as provided by § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count V: Violation of UPWA by Failing to Keep Accurate Records

110.     Plaintiffs reassert and re-allege the allegations set forth above.

111.     At all relevant times herein, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, accurate records of time worked and wages paid. U.C.A. § 34-28-1 *et seq.*

112.     During all times relevant to this action, Defendant was an "employer" of Plaintiffs and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

113.     Under Utah law, an employer is required to keep a true and accurate record of time worked and wages paid each pay period for each employee who is employed on an hourly or a daily basis in a form required by commission rules. U.C.A. § 34-28-10.

114.     As alleged herein, Defendant has not timely kept accurate time and wage records of its Medical Coders.

115.     Defendant does not ask that its Medical Coders submit the time they spent working, only the time they spent coding.

116.     Defendant also does not ask that its Medical Coders submit the business expenses they incur to perform their job.

117.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to keep accurate time and pay records for Plaintiffs and the Class.

19

118.   Plaintiffs may file this claim without exhausting any administrative remedies since they are filing this claim on behalf of themselves and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

119.   Plaintiffs and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily.  U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiffs and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of litigation and attorney's fees as provided by § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## Demand for Jury Trial

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Dated:            September 27, 2018              Respectfully submitted,

*/s/ Eric D. Barton* _____
Eric D. Barton, Utah Bar No. 6481
WAGSTAFF & CARTMELL LLP
4740 Grand Ave., Suite 300
Kansas City, MO 64112
Telephone: (816) 701-1100
Facsimile: (816) 531-2372
Email: ebarton@wcllp.com

**Attorneys for Plaintiffs Brian Hazel and
all other persons similarly situated**

20

Jack D. McInnes,  KS #21898, MO #56904
(*pro hac vice*)
MCINNES LAW LLC
3500 West 75th Street, Suite 200
Prairie  Village,  KS 66208
Telephone:  (913) 220-2488
Facsimile:  (913) 273-1671
Email:  jack@mcinnes-law.com


Patrick  G. Reavey,  KS #17291
(*pro hac vice*)
Kevin C. Koc, KS #24953
(*pro hac vice*)
REAVEY  LAW LLC
Livestock  Exchange  Building
1600 Genessee, Suite  303
Kansas City,  MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email:  preavey@reaveylaw.com
Email:  kkoc@reaveylaw.com
Website:  www.reaveylaw.com

**ATTORNEYS  FOR PLAINTIFFS**