Eric D. Barton (Utah Bar No. 6481)
ebarton@wcllp.com
WAGSTAFF & CARTMELL LLP
4740 Grand Ave. Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
**Attorney for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **LAURIN DESSEAUX,** individually and on behalf of similarly situated persons,<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**AVIACODE, INC.,**<br><br>    **Defendant.** | Case No. **2:17-cv-01065-BSJ**<br><br>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM IN SUPPORT<br><br>Judge: Hon. Bruce S. Jenkins |

Plaintiff Laurin Desseaux ("Named Plaintiff"), on behalf of himself individually and as representative of the individuals who joined this Action under 29 U.S.C. § 216(b) (collectively referred to as "Opt-In Plaintiffs") and/or members of the Rule 23 Settlement Class described below (collectively referred to as "Plaintiffs" or "Settlement Class Members"), hereby move this Court for an Order: (1) preliminarily approving the Parties' class action settlement ("Settlement") set forth in the Stipulation of Settlement and Release of Claims ("Agreement") attached as Exhibit 1; (2) directing the Settlement Administrator to give notice of the Settlement to all putative class members in a form substantially similar to the draft Notice attached as Exhibit 2; and (3) scheduling a final approval and fairness hearing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to consider final approval of the Settlement after the class has had an opportunity to exercise their right to object, opt out, or accept the benefits provided to them.

This motion is unopposed. A proposed Order is submitted for the Court's consideration.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION………………………………………………………………**6**

II.  FACTUAL BACKGROUND…………………………………………….........**7**

    A.     Claims and Procedural Background…………………………………**7**

    B.     The Settlement………………………………………………….......**9**

III.  ARGUMENT………………………………………………………………  **12**

    A.     Legal Standard for Preliminary Approval of Class Action Settlement….......**12**

    B.     Certification of the Settlement Class Is Appropriate………………………...**14**

             *1.  Numerosity………………………………………………………...***14**

             *2.  Commonality*………………………………………………………**15**

             *3.  Typicality*………………………………………………………**15**

             *4.  Adequacy*……………………………………………...............**16**

             *5.  Rule 23(b) requirements*………………………………………**16**

    C.     Preliminary Approval of the Settlement Is Warranted…………………...**18**

             *1.  The Settlement is entitled to an initial presumption of fairness*…………**19**

             *2.  The Settlement provides meaningful monetary relief and avoids risks of further litigation*………………………………………………..............**19**

             *3.  The Settlement has no "obvious deficiencies" that should prevent or delay preliminary approval*……………………………………..………………**20**

    D.     The Notice Plan is Sufficient and Appropriate………………………**22**

IV. CONCLUSION………………………………………………………………**23**

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997) .......................................................... 14

*Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, at *7 (D. Utah Sept. 30, 2015) .... 17

*Chappell v. Copper View Animal Hosp.*, No. 1:17-MC-52, 2017 WL 5172392, at *2 (D. Utah May 26, 2017) ............................................................................................................................ 18

*Coleman v. Recontrust Co.*, 2012 U.S. Dist. LEXIS 53928, at *8 (D. Utah 2012) .................. 14

*DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010) ............................................................ 15

*Dilley v. Academy Credit, LLC*, No. 2:07CV301DAK, 2008 WL 4527053, at *2 (D. Utah Sept. 29, 2008)...................................................................................................................................... 14

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994)13

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001)........................................ 13

*In re Crocs, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 122593, at *10-11 (D. Colo. 2013).......... 13

*Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 80 (E.D.N.Y. 2007) ....................................................... 13

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)...................................................... 18

*Menocal v. The GEO Group, Inc.,* 882 F.3d 903, 913 (10th Cir. 2018)...................................... 16

*Miller v. Basic Research, LLC*, 285 F.R.D. 647, 656 (D. Utah 2010)........................................ 15

*Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, at *51 (D.N.M. Jan. 31, 2011).... 18

*United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993) ............................................. 12

**Statutes**

29 U.S.C. § 201, *et seq*............................................................................................................... 6

29 U.S.C. § 216(b) ....................................................................................................................... 17

Utah Code Ann. § 34-28-1 *et seq*................................................................................................ 6

**Rules**

Fed. R. Civ. P. 23(a)(1) …………………………………………………………………14

Fed. R. Civ. P. 23(a)(2).................................................................................................................. 15

Fed. R. Civ. P. 23(a)(3).................................................................................................................. 15

Fed. R. Civ. P. 23(a)(4).................................................................................................................. 16

Fed. R. Civ. P. 23(b)(3)...................................................................................... 17

Fed. R. Civ. P. 23(e) ........................................................................................... 23

Fed. R. Civ. P. 23(e)(2)....................................................................................... 12

**Treatises**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:25, at 38-39 (4th ed. 2002) 13

5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002)............................................................................................................. 13

Manual for Complex Litigation § 21.632 (4th ed. 2004)........................................... 13

Newberg on Class Actions § 11:41....................................................................... 18

Newberg on Class Actions, § 11.25...................................................................... 19

## I. INTRODUCTION

After more than 16 months of litigation, a full day of mediation in Salt Lake City with a respected mediator, and extensive negotiations thereafter, the Parties have reached an arm's-length settlement of Plaintiffs' claims that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the Utah Payment of Wages Act ("UPWA"), Utah Code Ann. § 34-28-1 *et seq.* by failing to pay all wages and reimburse business expenses due to the putative class of current and former medical coders it classified as independent contractors ("Medical Coders"). The Parties now ask the Court to enter an Order of preliminary approval of their Settlement, conditionally certifying the Settlement Class, appointing settlement class counsel, directing that proper notice of the Settlement be mailed to the Class, and scheduling a final hearing in approximately 90 days to consider final approval and fairness after the Class has had its opportunity to give feedback.

The proposed $1,525,000.00 settlement amount would provide direct, *pro rata* financial compensation to every member of the approximately 1,087-member Settlement Class of current and former Medical Coders of Defendant. No claims process is needed for Class Members to receive their checks. Instead, checks will be mailed directly from the settlement fund to them by the Settlement Administrator to them. Most individual recoveries by Class Members from the net settlement amount are expected to fall within the range of several hundred to several thousands of dollars, depending on hours worked. Top recoveries by those who worked long hours during the class period will be well over $10,000.00, while even those who worked very little will be entitled to a minimum payment of not less than $25.00. Based on Plaintiffs' estimated *pro rata* distributions, more than 150 Settlement Class members will receive in excess of $1,000 per

person, and a total of approximately 250 Settlement Class Members will receive in excess of $500 per person.

Each Class Member's recovery will be calculated by the Settlement Administrator using a consistent formula based principally on the estimated number of hours worked during the class period. Added weight is given to estimated overtime hours worked, and to whether the Class Member preserved his/her FLSA rights in this action by "opting in" last summer into the FLSA conditionally-certified collective action.

The settlement fund will also be used to pay attorneys' fees and expenses to class counsel as approved by the Court, service awards to the Named Plaintiff and Brian Hazel (the original named plaintiff) as approved by the Court, the costs of administering the settlement and sending notice to the Class, and all employer-side taxes on the portions of Class Members' recoveries allocated as unpaid wages.

The Parties and the mediator have endorsed the Settlement, and the Parties now request the Court's approval and authorization for next steps.

## II. FACTUAL BACKGROUND

### A. Claims and Procedural Background

In this combined class and collective action lawsuit, Plaintiffs allege that Defendant failed to properly pay wages and reimburse expenses to its Medical Coders by misclassifying them as independent contractors rather than employees. (Doc. 2.) Defendant denies these claims. Nevertheless, while this lawsuit was pending, Defendant changed its classifications for its Medical Coders going forward from independent contractors to employees.

For more than 16 months, the Parties litigated a multitude of complex, disputed issues. These included whether Utah law applies to Defendant's Medical Coders who are located all across the country; and whether an FLSA class of Medical Coders should be conditionally

certified despite varying circumstances under which they were working alleged by Defendant and the varying amounts of time worked per week. The Parties also engaged in substantial written and electronic discovery. Ultimately, tens of thousands of pages of documents and voluminous data regarding Defendant's payroll and timekeeping practices were produced to Plaintiffs, and depositions were taken of Mr. Hazel in Los Angeles and two of Defendant's corporate representatives in Salt Lake City.

Plaintiffs sought and obtained, over Defendant's initial resistance, conditional certification of their FLSA collective action claims. (Docs. 46, 49). They were seeking Rule 23 class certification on their state law claims, which Defendant vigorously disputed. Shortly before briefing Rule 23 class certification – when both sides faced risks and uncertainties of continuing with further litigation -- the Parties began discussing resolution. The first informal discussions started on July 29, 2018, immediately following one of the corporate representative depositions.

On August 2, 2018, the Court granted the Parties' joint motion to stay proceedings pending mediation (Doc. 75), which occurred in Salt Lake City on August 30, 2018 with mediator Mark James of Hatch, James & Dodge. At the end of the mediation, the Parties executed a term sheet summarizing the terms of their settlement, but they were ultimately unable to execute a final settlement agreement.

On September 27, 2018, Plaintiffs filed an amended complaint with written permission of Defendant adding Named Plaintiff Desseaux. (Docs. 80-81). As the Parties continued negotiations, the Parties requested, and the Court granted, several extensions of the Order staying the proceedings.

On November 16, 2018, the Court held a status conference in which the Parties discussed the status of their settlement negotiations. Shortly thereafter, on November 21, 2018, Plaintiffs filed a motion to substitute Mr. Desseaux as Class Representative. They also filed a joint motion to stay proceedings pending a second mediation scheduled with Mr. James on January 17, 2019. On November 26, 2018, the Court granted both motions. (Docs. 93-94).

Just a few days before they were to travel to Salt Lake to conduct their second mediation, the Parties reached an agreement in principle to resolve this matter in full. On January 23, 2019, they filed a joint status report advising the Court of their resolution and of their plan to submit the Settlement for the Court's approval. (Doc. 95).

### B. The Settlement

The Settlement seeks (a) the certification of a Rule 23 Class for settlement purposes of "all Medical Coders who provided coding services to Defendant during the Covered Period, a group calculated based on Defendant's pay records as 1,087 Medical Coders"; and (b) final certification for settlement purposes of the conditionally-certified FLSA collective action. *See* Ex. 1, § IV.1.

The Covered Period extends from December 27, 2017 – the date Defendant reclassified its Medical Coders as employees – back for the full length of the applicable statutes of limitation under the FLSA and state law. *Id.,* § II.4.

Preliminary and final approval from the Court are conditions precedent to the Agreement becoming effective. *Id.,* § III.1-2. The Parties agree that Mr. Desseaux should be appointed as Class Representative, and that Jack McInnes of McInnes Law LLC, Patrick Reavey and Kevin Koc of Reavey Law LLC, and Eric Barton of Wagstaff & Cartmell LLP be appointed as Settlement "Class Counsel." *Id.,* § IV.3.

9

Under the Settlement, Defendant agrees to pay $1,525,000.00 (the "Gross Settlement Amount") into an escrow account created by the Settlement Administrator through four installment payments made over a 15-month period from June 15, 2019 to September 15, 2020. *Id.,* § V.1-2. Spreading the Defendant's payments into the Settlement Fund over time is aimed at helping Defendant avoid a judgment that could pose an existential threat and result in the layoff of Medical Coders, many of whom are Class Members. The financial condition of Defendant was thoroughly reviewed through the exchange of financial documents and Plaintiffs' hiring of an independent financial expert. In exchange for full payment of the Gross Settlement Amount, Defendant receives a dismissal of the action with prejudice and a full and final release of wage and hour claims from Settlement Class Members as set forth in the Agreement. *See id.* § V.1.

The significant majority of the settlement fund goes to make direct, *pro rata* payments to Class Members, as described more fully below. The Gross Settlement Amount will also pay for (1) attorneys' fees, litigation costs and expenses, and service awards to Mr. Desseaux and Mr. Hazel (as approved by the Court), (2) reasonable costs of notice and settlement administration; and (3) employer-side taxes owing on any payments under the Settlement (*e.g.,* FICA, FUTA). *Id.,* §§ V.1, VI, VIII, IX.1, XII.4. Defendant will not oppose a request by Class Counsel for attorneys' fees of up to one-third (33.3%) of the Gross Settlement Amount, and reimbursement of litigation costs and expenses not to exceed $40,000. *Id.,* § VI.1-2. Attorneys' fees paid to Class Counsel will be paid on the same schedule and in the same proportion as distributions made to the Settlement Class. *Id.,* § VI.4.

The Parties agree that Simpluris, Inc., an experienced, national class action administration firm headquartered in Orange County, California, shall serve as Settlement Administrator with the Court's approval. *Id.,* § VII.1. As Administrator, Simpluris will, among

other things: print, mail, and email notices to the Settlement Class using a database of addresses and contact information provided from Defendant's payroll records, as updated by further information provided by Class Members or through other publicly available sources; create and administer the escrow account used to hold, administer, and make approved payments out of the Gross Settlement Amount; calculate and mail payments to the Settlement Class; compute, report and pay employer-side tax obligations applicable to settlement payments to Class Members; receive and report any requests for exclusion ("opt-outs"), or objections received; and any other tasks deemed necessary and approved by the Court. *Id., § VII.2.*

The Net Settlement Fund will be distributed to all Class Members who do not timely opt out of the Settlement. Payments will come in two parts, due to the fact that Defendant is paying the Gross Settlement Amount in installments over time. The first distribution to the Settlement Class will happen on or around July 15, 2019 or 30 days after Final Approval, if later. It will distribute the funds on hand when Final Approval occurs. The second distribution, which will consist of the remainder of each Class Member's total compensation, will happen on or about September 30, 2020. *Id.*, § XII. The Settlement Administrator will determine applicable taxes and withholdings and will issue IRS Form W-2s and 1099s as appropriate. *Id.*

Settlement Class Members are not required to submit a claim or complete a form to receive payment from the Net Settlement Fund. Notice of the settlement ("Class Notice") will be distributed by Simpluris by first-class mail and email (if available), after diligent efforts to ensure current addresses for all Settlement Class Members. *Id*., at § X, ¶ 1. Any Class Notices returned as undeliverable by the post office will be subject to an advanced address search and re-mailed. *Id*.

Under the Settlement and as explained in the Notice attached to this motion, Class Members will have the opportunity to decide how they choose to respond to the Settlement, *i.e.,* whether they want to accept benefits, whether they want to object to the Settlement, or, alternatively, whether they want to opt out of the Settlement to preserve their individual claims rather than accept the monetary payments. *Id.,* § XI. If the combined distributions of the Net Settlement Amount to Settlement Class Members who elect to become Opt-Outs exceed $250,000.00, or if 25 or more putative Settlement Class Members elect to become Opt-Outs, Defendant has a unilateral right to rescind the Settlement. *Id.,* § XI.4.

The Settlement includes other terms typical of class and collective action settlements like this one. *Id.* Defendant denies wrongdoing, while Class Members confirm their belief in the merits of their claims. *Id.,* § I, 16-17. The Settlement reduces the inherent risks of litigation over class certification and decertification of the collective action, trial, and the costs and delay of further litigation including possible appeals. *Id.* The Parties will ask the Court to retain exclusive jurisdiction over the interpretation, implementation and enforcement of the Settlement. *Id.,* § XVI.7.

## III.  ARGUMENT

### A.  Legal Standard for Preliminary Approval of a Class Action Settlement

The approval of a proposed class action/collective action settlement like this is a matter within the broad discretion of the trial court. *United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993); *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984). While a settlement that binds class members can only be approved "after a hearing and on finding that it is fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), preliminary approval does not require the Court to answer that question. Rather, that determination is made only after notice of

the settlement has been given to members of the class and after they have been given an opportunity to voice their views of the settlement. *See In re Crocs, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 122593, at *10-11 (D. Colo. 2013); 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).   By the same token, the FLSA settlement – which is not subject to opt-in plaintiffs "opting out"– can undergo its final review at the same time as the Court's final class action review under Rule 23.

For Rule 23 claims, class-action settlement approvals typically follow a two-step process. First, counsel submits the proposed settlement terms so the Court may preliminarily evaluate the fairness of the settlement. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004) ("Manual"); *see also* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:25, at 38-39 (4th ed. 2002) ("Newberg on Class Actions") (endorsing two-step process), *accord Chappell*, 2017 WL 5172392, at *2. If the preliminary evaluation of the settlement does not disclose grounds to doubt its fairness or other obvious deficiencies and appears to fall within the range of possible approval, the Court should direct that notice of a fairness hearing under Rule 23(e) be given to class members. At the fairness hearing (also called a final approval hearing), the Court hears argument and considers evidence in support of, and opposition to, the settlement. *See* Manual § 21.633.

Accordingly, the standard for preliminary approval is less rigorous than the analysis at final approval. *See. e.g., Crocs*, 2013 U.S. Dist. LEXIS, at *10-11; *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 80 (E.D.N.Y. 2007). *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). Courts generally consider if there is probable cause, or whether it is plausible, to justify directing notice to the class of the proposed settlement. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994). After the deadline set and

communicated for Class Members to object or to opt out of the Settlement, the Court holds a "final approval" hearing to address the fairness, reasonableness, and adequacy of the Settlement, and make a decision on final approval, which is a condition precedent for the Agreement to become effective and binding on the Parties.

## B. Certification of the Settlement Class Is Appropriate

Before granting preliminary approval of a settlement, the Court must determine that Plaintiffs' proposed Rule 23 Class can be certified for settlement purposes. *See* Manual for Complex Litigation (4th Ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997). Certification is appropriate where the proposed class and class representative(s) meet all four prerequisites of Rule 23(a) – (i) numerosity; (ii) commonality; (iii) typicality; and, (iv) adequacy of representation – and one of the three requirements of Rule 23(b) is met. Here, certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

All requirements for certification of a settlement class are present here:

### 1. Numerosity

The first requirement under Rule 23(a) is that the Class is so numerous that joinder of all members would be "impracticable." *Coleman v. Recontrust Co.*, 2012 U.S. Dist. LEXIS 53928, at *8 (D. Utah 2012) citing Fed. R. Civ. P. 23(a)(1). Numerosity is generally found when a class includes 40 or more members. *Dilley v. Academy Credit, LLC*, No. 2:07CV301DAK, 2008 WL 4527053, at *2 (D. Utah Sept. 29, 2008). In this case, the proposed Settlement Class consists of approximately 1,087 members based on the records of Defendant. Numerosity is easily met.

### 2. *Commonality*

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality requires only one question of law or fact common to the entire class. *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010); *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 656 (D. Utah 2010). Here, common questions of both law and fact exist concerning the true nature of Medical Coders' work for Defendant. All Class Members contracted with Aviacode in substantially the same manner and worked a substantially similar job. Plaintiffs' Amended Complaint addresses the following legal issues, which apply to each member of the Class:

- Whether Aviacode improperly misclassified medical coders as independent contractors;
- Whether Aviacode's payment policies violate the UPWA;
- Whether members of the Class are entitled to the remedies under the UPWA;
- Whether members of the Class are entitled to declaratory relief;
- Whether members of the Class are entitled to injunctive relief; and
- Whether members of the Class are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the UPWA.

### 3. *Typicality*

The third prerequisite to class certification only requires that the Named Plaintiff's claims be typical of the Class. Fed. R. Civ. P. 23(a)(3). This element is satisfied if a named plaintiff's claims arise from the same events or practices giving rise to the claims of other class members and are based on the same law. *Miller,* 285 F.R.D. at 656. The test for typicality is whether other class members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct. *Id.* at 654.

Here, Mr. Desseaux's claims are clearly typical of the claims of other Class Members. Plaintiffs contend that each member of the proposed Class was a Medical Coder misclassified as an independent contractor and not paid for all time worked nor reimbursed for all business expenses incurred. Mr. Desseaux and every member of the Class have these claims against Aviacode and are subject to the same defenses. Typicality is easily satisfied.

### 4.  *Adequacy*

The final requirement of Rule 23(a) is simply that the representative plaintiff will fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4). All this factor requires is that "the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185. Here, Mr. Desseaux has the same interests as the Class Members that he seeks to represent because this action is based upon the same alleged conduct of Aviacode - misclassification of Medical Coders as independent contractors and failing to pay and/or reimburse correctly under UPWA.

Furthermore, Plaintiffs are represented by counsel who have demonstrated their qualifications, competence, and commitment to the Class through aggressively pursuing claims on behalf of the Class and seeing this case through resolution under difficult circumstances. Proposed Class Counsel have extensive experience in class action litigation, including numerous wage and hour class action lawsuits under the FLSA and state law. *See* Declarations of Jack McInnes, Patrick Reavey, and Eric Barton filed concurrently herewith as Exhibits 3-5.

### 5.  *Rule 23(b) requirements*

Once the four requirements of Rule 23(a) are met, the Class must also satisfy at least one provision of Rule 23(b). *Menocal v. The GEO Group, Inc.,* 882 F.3d 903, 913 (10th Cir. 2018). Only the Rule 23(b)(3) category applies here. Under Rule 23(b)(3), a class may be certified

when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Menocal*, 882 F.3d at 914.

The common issue presented in this action - whether Defendant wrongly classified Medical Coders as independent contractors and, consequently, violated state and federal wage and hour laws in how it compensated them - predominates over any individual issue that may exist. In addition, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because Defendant employed over a thousand individuals as Medical Coders during the class period across the United States. Through the class action vehicle, relief may be provided to Class Members without a need for numerous separate trials on the same facts, risking potentially inconsistent adjudications and inefficiencies given a relatively small amount of some Class Members' claims (because of limited hours worked). A class action saves time, effort and expense, and promotes uniformity among persons similarly situated.

Accordingly, the Parties[1] jointly request that the Court certify the Settlement Class pursuant to Rule 23(b)(3) for purposes of granting preliminary approval of the Settlement.[2]

---

[1] Pursuant to the terms of the Agreement, Defendant expressly reserves the right to contest class certification if this Settlement is not finally approved by the Court. (Ex. 1, § IV.4-5).

[2] Unlike Rule 23(e), the FLSA does not expressly require judicial approval of a collective action settlement. After the Parties stipulated to conditional certification of Plaintiffs' FLSA claims, 47 opt-ins affirmatively consented to join the action and are thus parties to the action pursuant to 29 U.S.C. § 216(b), delegating to the Named Plaintiff authority for making decisions about the collective action, including decisions about settlement. *See e.g.*, Notice of Consents to Join, Docs. 55-63, 65, 68, 70-71, 76. Nevertheless, because an FLSA claim cannot be released without (1) court approval, or (2) the United States Department of Labor administering the settlement, litigants typically seek court approval before dismissing their claims with prejudice. *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, at *7 (D. Utah Sept. 30, 2015). Review of a

### C.    Preliminary Approval of the Settlement Is Warranted

The Parties' proposed Settlement satisfies all inquiries applicable at this stage. Under the Settlement, each Class Member stands to receive their *pro rata* share of the net settlement amount, without a need to file a claim or take any action at all. Their share of the fund will be determined on a *pro rata* basis with all other Class Members based primarily on how many hours they worked for Defendant during the class period, which is appropriate, because the compensation is for, among other things, the alleged failure to properly pay Class Members for their hours worked.

#### 1.    *The Settlement is entitled to an initial presumption of fairness.*

Courts ordinarily adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). Counsel's judgment as to the fairness of the settlement agreement is entitled to considerable weight, where, as here, counsel are attorneys with substantial experience in complex class action litigation and wage and hour class actions, and they mediated at arms' length with an experienced and respected mediator (here, Mr. James). *Lucas*, 234 F.R.D. at 695.

#### 2.    *The Settlement provides meaningful monetary relief and avoids risks of further litigation.*

---

settlement under the FLSA is different than Rule 23(e). It does not involve a two-step process and courts only review the proposed settlement to determine if it "is fair and reasonable resolution to a bona fide dispute over FLSA provisions." *See, e.g., Chappell v. Copper View Animal Hosp.*, No. 1:17-MC-52, 2017 WL 5172392, at *2 (D. Utah May 26, 2017); *Robles v. Brake Masters Sys.*, 2011 U.S. Dist. LEXIS 14432, at *51 (D.N.M. Jan. 31, 2011) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The Settlement provides a reasonable compromise of the Parties' claims and defenses. Defendant disagreed about several Plaintiffs' claims, as well as the valuation of those claims. Further, Defendant has maintained the Class Members were properly classified and/or paid.

The Parties' respective positions have been extensively debated and briefed. When ruling on Defendant's motion to dismiss, the Court heard oral argument for nearly 1 ½ hours and, despite the Court's ruling in Plaintiffs' favor, the Parties continued to contest the issue of extraterritorial application of UPWA in their discussion of the merits of this case. The issue of classification of workers (employees vs. independent contractors) is often fact-dependent, and there is very little Utah law to guide the parties regarding obligations to reimburse business expenses under UPWA.  Thus, if the case were to proceed to trial, both Parties would face litigation risks, including appeals that could change the outcome achieved at trial after considerable delay and expense.

Class Members and their counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery of $1,525,000.00 versus what could have been recovered at trial. They also carefully considered Defendant's ability to pay a judgment while remaining viable to pay current Class Members.  This latter issue was explored at length in mediation and through inspection of contemporaneous financial statements of Defendant.

Further, the Parties have worked hard to ensure an equitable distribution of Settlement funds. Distributions to the Class under the Settlement will be closely tied to estimated hours worked by each Class Member. Recoveries will range from thousands of dollars for those who worked the most, to hundreds of dollars to others, and include a minimum payment of no less than $25 for those Class Members whose records indicate any work performed for Defendant

during the Class Period, even if minimal. Accordingly, the Settlement provides fair, valuable, and meaningful relief to the Class.

### 3. The Settlement has no "obvious deficiencies" that should prevent or delay preliminary approval.

No "obvious deficiencies" preclude preliminary approval of the Settlement, such that notifying the Class and proceeding to a fairness hearing would be a waste of time. Newberg on Class Actions, § 11.25. The Settlement does not, nor can it, disproportionally favor certain Class Members. Allocation of the settlement fund shall be on a *pro rata* and proportional basis that provides more compensation to Class Members who worked more hours, and more overtime hours. These same factors would have been a part of Plaintiffs' damages calculation at trial. Thus, the allocation will reflect a compromise of the actual damages Class Members would have sought at trial.

The Named Plaintiff – Mr. Desseaux – will apply for Service Awards for himself and Mr. Hazel, which were well earned. Mr. Hazel supported this case from its inception, subjecting himself to written discovery that evaluated extensive portions of his email and day-to-day activities doing work for Defendant. He also sat for a full-day deposition in Los Angeles, California. Mr. Desseaux stepped in when required and helped negotiate a positive outcome for the Class. Both Mr. Desseaux and Mr. Hazel were ready and willing to excuse themselves from their daily lives to testify at trial. Thus, both Mr. Hazel and Mr. Desseaux served important roles to achieve the results obtained in this case. Enhanced awards are fair given that the vast majority of the Settlement Class Members will receive benefits of the Settlement without having had to take any action to support the prosecution of this litigation. Moreover, no promises have been made to these individuals, and the amount of their service awards will be approved by the Court. The Parties' Settlement is not contingent on any Service Award.

Likewise, the Settlement is not conditioned on an attorneys' fee award, and any attorneys' fee and cost award are subject to separate Court approval. Furthermore, the amount of fees expected to be requested by the Class Counsel are proportionate to the benefits enjoyed by the Class Members and are well within the range of reasonableness of awards that are commonly approved in class actions of this nature.

More specifically, Class Counsel will seek an award based on a percentage of the Gross Settlement Amount. This is not a "claims made" settlement where Settlement Class Members are required to return documentation or take some other action to receive their *pro rata* share of the settlement fund. Rather, full distribution of the net settlement amount (after fees, costs, and expenses of administration) to the Class is expected because checks will be directly mailed to Class Members at their last known addresses, which Class Members will be encouraged to update with the Settlement Administrator as necessary.

The Settlement was reached only after significant litigation and informal and formal mediation. It is the product of extensive discovery, careful vetting of the risks involved, including careful review of Defendant's financial status and ability to pay the Settlement, as well as arm's-length negotiations between experienced attorneys familiar with the complex legal and factual issues involved in the case. Class Members' counsel are very experienced attorneys prosecuting wage-and-hour claims, and they believe the Settlement is in the best interests of each of the Class Members, and an experienced and sophisticated mediator agrees. In light of the risk and delay of litigation weighed against the direct benefits of the Settlement, the proposed resolution is a fair, reasonable and adequate compromise of the dispute and should be preliminarily approved.

For these reasons, the Settlement retains its initial presumption of fairness and should be preliminarily approved.

**D.    The Notice Plan Is Sufficient and Appropriate**

After the Court previously granted conditional certification of the FLSA class, the Court approved a Notice Plan that was successfully implemented by Simpluris. As a result, and pursuant to that Plan, Simpluris has already conducted one direct mailing to the last known addresses of the putative FLSA class. As a part of that effort, Simpluris has already conducted a National Change of Address Database search and employed more advanced searches when mail was returned as undeliverable.

The Parties have agreed to the same plan here for giving notice to the proposed Settlement Class here. Notice will be given by direct mail – and by email where possible – by Simpluris, the same administrator who distributed the prior FLSA class certification notice. This Plan has been found reasonable by the Court once and should be found reasonable again.

Rule 23(e) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Since the notice contemplated by the Settlement is essentially identical with the class certification Notice Plan, the Settlement Notice Plan is equally reasonable and the best practicable means of notifying Class Members of the Settlement.

The attached draft Notice, attached as Exhibit 2, has been agreed to by the Parties and informs Class Members in plain English about the consequences of participating in, and opting out of, the Settlement. It discloses the key terms of the Settlement, including the amount of the Gross Settlement, all payments to be made from the Gross Settlement Amount and Net Settlement Amount (and how the payments from the Net Settlement Amount will be calculated),

as well as the nature and extent of the release of claims, and the opt-out and objection processes. *See* Ex. 2. For these reasons, Notice to the Class in substantially the same form as attached as Exhibit 2 (as supplemented or amended with Court approval, if necessary, prior to mailing) should be approved, along with the plan for its dissemination by the Settlement Administrator.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask the Court for an Order granting preliminary approval of the Settlement; certifying the proposed Settlement Class; appointing Named Plaintiff as Class Representative; appointing Plaintiffs' Counsel as Settlement Class Counsel; directing dissemination of the proposed Notice; staying all proceedings until the Court renders a final decision regarding the Settlement; and setting a final fairness hearing. A Proposed Order granting preliminary approval and setting forth a proposed schedule for notice, exercise of opt-out and objection rights, and inviting the Court to set a final hearing, is submitted contemporaneously with this motion as Exhibit 6.

Dated:          February 22, 2019                    Respectfully submitted,


                                                     Eric D. Barton, Utah No. 6481
                                                     WAGSTAFF & CARTMELL LLP
                                                     4740 Grand Ave #300
                                                     Kansas City, MO 64112
                                                     Telephone: (816) 710-1100
                                                     Facsimile: (816) 531-2372
                                                     Email: ebarton@wcllp.com

                                                      */s/ Jack McInnes*
                                                     Jack McInnes (*pro hac vice*)
                                                     Kansas No. 21898, Missouri No. 56904
                                                     MCINNES LAW LLC
                                                     1900 West 75th Street, Suite 120
                                                     Prairie Village, KS 66208
                                                     Telephone: (913) 220-2488
                                                     Facsimile: (913) 273-1671
                                                     Email: jack@mcinnes-law.com

Patrick G. Reavey, KS #17291
(*pro hac vice*)
Kevin C. Koc, KS #24953
(*pro hac vice*)
REAVEY LAW LLC
Livestock Exchange Building
1600 Genessee, Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: preavey@reaveylaw.com
Email: kkoc@reaveylaw.com
Website: www.reaveylaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February 2019, I filed a true and correct copy of the foregoing motion via CM/ECF, which electronically served all counsel of record.

*/s/ Jack McInnes*

24