IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| LAURIN DESSEAUX, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>AVIACODE, INC.,<br><br>Defendant. | Case No. 2:17-cv-01065-BSJ<br><br>PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, AND MEMORANDUM IN SUPPORT<br><br>Judge: Hon. Bruce S. Jenkins |
|---|---|

Plaintiff Laurin Desseaux ("Named Plaintiff"), on behalf of himself and as representative of the individuals who joined this action under 29 U.S.C. § 216(b) (collectively referred to as "Opt-In Plaintiffs") and members of the Rule 23 Settlement Class described below (collectively referred to as "Plaintiffs" or "Class Members"), by and through Class Counsel, respectfully submits this Unopposed Motion for Final Approval of Class and Collective Action Settlement and Memorandum in Support, for an order finally approving the proposed settlement in this case, certifying the Settlement Class for final settlement purposes, and finding that the Court's notice requirements were fulfilled. In support of this unopposed motion, Plaintiff states as follows:

I. INTRODUCTION

As the Court is aware, after two years of litigation and negotiations, the parties reached a settlement of Plaintiff's claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Utah Payment of Wages Act ("UPWA"), Utah Code Ann. § 34-28-1 *et seq.* alleging Defendant failed to pay all wages and reimburse business expenses due to the putative class of current and former medical coders it classified as independent contractors ("Medical Coders"). The parties now ask the Court for final approval of their Settlement.

The results from the notice program speak for themselves. Of the 1,231 Class Members, only three were not located, four opted out, and no objections were received.

## II. BACKGROUND

### A. The Litigation

Plaintiffs' Complaint was filed September 22, 2017, alleging Defendant misclassified Medical Coders as independent contractors rather than employees, and thus failed to pay them for all hours worked (including overtime) or reimburse them for business expenses in violation of the FLSA and UPWA. (Doc. 2). Defendant moved to dismiss Plaintiffs' UPWA claims on November 10, 2017, arguing that Utah law should not apply extraterritorially. (Doc. 19). After the Court denied the motion on January 31, 2018 following briefing and oral argument (Doc. 35), Defendant filed its answer to the Complaint on January 31, 2018 (Doc. 38).

After Plaintiffs moved for conditional certification of their FLSA claims on February 21, 2018. (Doc. 42) and before Defendant's response was filed, the parties negotiated an agreement to send notice to a subset of putative opt-ins. (*See* Doc. 46). The Court approved the resulting proposed notice on April 24, 2018 (Doc. 49), and notice was mailed and emailed to 457 Medical Coders who, based on payroll records and reasoned assumptions of the parties, may have worked overtime during the Covered Period.

Thereafter, the parties engaged in substantial litigation, including taking depositions in Salt Lake City and Los Angeles, exchanging multiple sets of written discovery, and reviewing and producing tens of thousands of pages of documents and data.

### B. The Settlement

After substantial fact discovery, the parties agreed to mediation and jointly filed a motion to stay proceedings pending mediation, (Doc. 66), which the Court granted after hearing oral arguments on the matter on August 2, 2018 (Doc. 75).

After informal settlement discussions, exchange of position statements and additional document and data productions from Defendant, including documents and data regarding its financial condition (Doc. 78), the parties mediated the case on August 30, 2018 with Mark James of James & Dodge in Salt Lake City. Although the parties were able to execute a term sheet at the end of the mediation, they were ultimately unable to execute a final settlement agreement and continued good faith efforts to try to resolve the case. (Doc. 92).

With permission of Defendant, Plaintiffs filed an Amended Complaint adding Mr. Desseaux as a named plaintiff on September 27, 2018. (Doc. 81). The Court granted several extensions of the Order staying proceedings as the parties continued negotiations and held a status conference to discuss the standing of their settlement discussions on November 16, 2018. (Docs. 82-87, 90, 92, 94).

On November 21, 2018, Plaintiffs filed a motion to substitute Mr. Desseaux as Class Representative and a joint motion to stay proceedings pending a second mediation scheduled with Mr. James, which the Court granted on November 26, 2018. (Docs. 91-94).

After substantially more work, the parties reached an agreement in principle to fully resolve the matter just days before the second mediation. Defendant stipulated to certification of a Rule 23 opt-out class in addition to the previously-certified FLSA opt-in class and agreed to pay Plaintiffs a total of $1,525,000.00 (the "Gross Settlement Amount") using an escrow account created by the Settlement Administrator through four installment payments made by Defendant over a 15-month period from June 15, 2019 to September 15, 2020. (Doc. 100, Ex. 1, § V.1-2).

The extended timeframe was deemed necessary to help Defendant remain in business and avoid layoffs of some current Medical Coders, many of whom are Class Members. Class Counsel will not receive their fees any sooner than Class Members will receive their allocation of the Settlement Fund. In fact, attorneys' fees will be paid on the same schedule and in the same proportion as distributions made to the Class. (*Id.* at § VI.4).

In reaching this agreement, Plaintiffs thoroughly reviewed Defendant's financial documents with the aid of an independent financial expert. (Exhibit 1, McInnes Declaration, ¶ 6). Defendant will receive a dismissal of the action with prejudice and a full and final release of wage and hour claims from Settlement Class Members as set forth in the Agreement in exchange for full payment of the Gross Settlement Amount. (*See* Doc. 100, Ex. 1, § V.1).

A majority of the settlement fund will be sent to Class Members through direct, *pro rata* cash payments. The Gross Settlement Amount will also pay for (1) attorneys' fees, costs and expenses, and service awards to Mr. Desseaux and Mr. Hazel (as approved by the Court); (2) reasonable costs of notice and settlement administration; and (3) employer-side taxes owing on any payments under the Settlement (*e.g.,* FICA, FUTA). (*Id.* at §§ V.1, VI, VIII, IX.1, XII.4).

Defendant does not oppose Class Counsel's request for attorneys' fees of up to one-third (33.3%) of the Gross Settlement Amount or reimbursement of their litigation costs and expenses. (*See* Doc. 105).

The parties agreed that Simpluris, Inc. would serve as Settlement Administrator with the Court's approval. (Doc. 100, Ex. 1, § VII.1). As Administrator, Simpluris' duties include preparing, printing, and mailing the Notice of Settlement to the Settlement Class Members as directed by the Court; creating and administering an escrow account that will hold the settlement payments; creating, administering, and mailing payments to the Named Plaintiff/ Class Representative, the Settlement Class Members, and Class Counsel; computing, reporting and paying the employer-side tax obligations applicable to all payments subject to deductions and withholdings; issuing IRS Forms W-2s and 1099s; receiving and reporting objections to the settlement submitted by Settlement Class Members; receiving and reporting any requests for exclusion ("opt-outs") submitted by Settlement Class Members; and other tasks as the parties may mutually agree or the Court orders. (*Id.*, § VII.2; Exhibit 2, Declaration of Mary Butler, ¶ 3).

4

Payments of the Net Settlement Fund will be distributed in two parts to all Class Members who have not opted out, based on Defendant's installment payments. The first distribution to the Settlement Class will occur on or around July 15, 2019, or 30 days after Final Approval if later will be a distribution of the funds on hand when Final Approval occurs.

The second distribution consisting of the remainder of each Class Member's total compensation, will occur on or about September 30, 2020. (Doc. 100, Ex. 1, § XII). The Settlement Administrator will for both years determine applicable taxes and withholdings and will issue IRS Form W-2s and 1099s as appropriate. (*Id*.)

C. **Preliminary Approval and Notice of the Settlement**

Notice of the Settlement ("Class Notice") was distributed by Simpluris by first-class mail and email (when available). (*Id*. at § X, ¶ 1). Settlement Class Members were not required to submit a claim or complete a form to receive payment from the Net Settlement Fund.

The Class Notice clearly explained to the Class Members their options on how to respond to the Settlement, *i.e.,* whether they wanted to accept benefits, object, or, alternatively, opt out of the Settlement to preserve their individual claims. (*Id*. at § XI). If the combined distributions of the Net Settlement Amount to Settlement Class Members who elected to opt out exceeded $250,000.00, or if 25 or more putative Settlement Class Members opted outs, Defendant had a right to rescind the Settlement. (*Id*. at § XI.4). As of the filing of this motion, only a total of four putative Settlement Class Members elected to opt out. (Ex. 2 at ¶ 14). Moreover, no Settlement Class Members chose to object. (*Id*. at §15).

Other terms typical of class and collective action settlements such as this are included with this Settlement. Defendant denies wrongdoing, while Class Members confirm their belief in the merits of their claims. (Doc. 100, Ex.1, § I, 16-17). The Settlement reduces the inherent risks and costs of litigation for the Parties. (*Id*).

The parties also asked the Court to retain exclusive jurisdiction over the interpretation, implementation, and enforcement of the Settlement. *(Id.* at § XVI.7).

### III. ARGUMENT

#### A. The Court Should Grant Final Approval of the Proposed Settlement

The Settlement satisfies all final approval inquiries applicable and should be approved. Under the Settlement, each Class Member will receive their *pro rata* share of the Net Settlement Amount, without a need to file a claim or take any action at all. The *pro rata* share is based primarily on the number of hours each Class Member worked for Defendant during the relevant class period, which is appropriate, because the compensation is for, among other things, the alleged failure by Defendant to properly pay Class Members for their hours worked.

##### 1. Final Settlement Approval Standard Under Rule 23

A class action may not be dismissed, compromised, or settled without the Court's approval. Rule 23(e); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). But a settlement should be approved when it is fair, reasonable, and adequate. Rule 23(e)(2); *Fager v. CenturyLink Communs., LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016). This ensures the passive class members are protected "from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Tenth Circuit looks at four factors to determine if a settlement has met the burden of being fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Fager*, 854 F.3d at 1174. The Settlement at hand easily satisfies these requirements.

(1) <u>The Settlement was Negotiated at Arm's Length</u>

Settlements are presumed fair, reasonable, and adequate when they are "a result of a fair and difficult negotiation." *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *14 (D. Utah Sept. 30, 2015). Absent evidence of collusion, then the "[a]rm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Id*. Further, where such "negotiations between experienced counsel after significant discovery had occurred," settlement results are presumed fair. *See Kurlander v. Kroenke Arena Co., LLC*, 2018 U.S. Dist. LEXIS 62863, *6 (D. Colo. Apr. 13, 2018).

This proposed Settlement is a result of such fair and difficult negotiations between experienced counsel with the assistance of Mark James of James & Dodge in Salt Lake City, an experienced mediator. (Ex. 1 at ¶ 4). The parties held informal negotiations and mediated for a full day after which they negotiated further to settle this case. Like opposing counsel, Class Counsel have extensive experience in complex class action litigation and each has served as lead counsel in numerous complex class action cases. (*Id*. at ¶ 2; *see also* Docs. 98-3, 4 and 5, Declarations of McInnes, Reavey and Barton in support of preliminary approval). They have litigated this case zealously on behalf of the Class. In particular, they worked for months with opposing counsel after the first mediation to keep the settlement negotiations moving forward and reach a deal that benefited the Class without risking their jobs. (Ex. 1 at ¶ 5).

(2) <u>There are Substantial Risks and Additional Costs of Continued Litigation Should the Settlement Not Get Finally Approved</u>

When serious questions of law and fact exist in a case in which a settlement has been reached, and those complex issues have not yet been addressed, they can "plac[e] the ultimate outcome of the litigation in doubt," and so a settlement "eliminates the difficulties in determining the ultimate outcome" of the case that could impact the results for either side.

7

*Marcus v. State of Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002); *see also e.g., Fager*, 854 F.3d at 1175 (10th Cir. 2016) (same).

This case presents several complex, open questions such that continuing litigation made the ultimate outcome uncertain for both sides. Although the Court permitted Plaintiff's claim for extraterritorial application of UPWA to proceed past the motion to dismiss stage, Defendant continued to contest this issue as it went to the merits. Further, the lack of Utah case law regarding obligations to reimburse business expenses under UPWA created significant disagreements about the potential for, and the amount of, damages. Given these and other issues, had the case proceeded to trial the ultimate outcome of the litigation would be seriously in doubt for both sides, not to mention add considerable expense and delay. Under the circumstances, the parties determined the benefits of settlement outweigh the uncertain outcome of this complicated litigation.

(3) <u>The Value of Immediate Recovery Outweighs Any Merely Possible Future Relief Should Litigation Continue</u>

The Settlement's monetary value must then be compared to "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261(D. Kan. 2006). Where parties face significant risks with continued litigation, "resolution through settlement [is] more valuable than the mere possibility of a more favorable outcome after further litigation," and it makes settlement "even more fair." *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *15.

This Settlement provides significant relief to Class Members spread over two payments while avoiding potential lay-offs of Class Members and unsustainable financial hardship for the company. Although Class Counsel calculated potential damages of up to $8 million dollars in a best-case-scenario analysis assuming favorable outcomes on all disputed issues of liability and

8

damages at trial, the recovery of $1.525 million dollars in this Settlement is a significant win for the Class given the financial uncertainties Defendant is facing combined with the uncertainties in the outcomes of the disputed legal and factual issues discussed above.

The parties also carefully evaluated the best way to ensure an equitable distribution of the Settlement funds. Plaintiffs utilized a distribution method to apportion the settlement fund based on the amount of estimated unpaid regular and overtime hours. (Ex. 1 at ¶ 7). Plaintiffs used Defendant's compensation records, which captured biweekly payment information, to estimate the number of hours each Class Member worked during each week of the class period. In addition, the hours worked was augmented on a percentage basis to capture unpaid work. For instance, if an individual received only a few hours of payment for a given week, that individual would have likely had less off-clock time than an individual that had forty or more hours of wages. These unpaid hours were then converted to points and then each member received a portion of the settlement that was proportional to the total number of points attributable to that person. Also, as to the unpaid business expenses, because the amount of business expense was determined to be proportional to the amount of time a person worked, the time-based point distribution fairly represented a manner to distribute the settlement to the class members. Given the nature of this case and that the distribution method is closely tied to the estimated hours worked by each Member, it will provide fair, valuable, and meaningful relief to the Class. (*Id.*) As such, the Settlement's value of immediate recovery favors final approval.

(4) <u>The Parties Believe the Settlement is Fair and Reasonable</u>

When there are no objections to a settlement agreement reached by competent and experienced legal counsel for the parties, and the parties believe the settlement to be fair and reasonable, final approval of the proposed settlement is favorable. *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *15; *see also Fager*, 854 F.3d at 1175; *Marcus*, 209 F. Supp. 2d at 1183. Counsel's judgment as to the fairness of the settlement agreement is entitled to considerable

weight, where, as here, counsel are attorneys with substantial experience in complex class action litigation and wage and hour class actions and mediated at arms' length with an experienced and respected mediator. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). As of this filing, only four Class Members opted out, and no objections have been received. Final approval is clearly warranted.

### 2. *Final Settlement Approval Standard Under the FLSA*

Unlike Rule 23(e), the FLSA does not expressly require judicial approval of a collective action settlement. After the parties stipulated to conditional certification of Plaintiffs' FLSA claims, 47 opt-ins affirmatively consented to join the action and are parties to the action pursuant to 29 U.S.C. § 216(b), delegating to the Named Plaintiff authority for making decisions about the collective action, including decisions about settlement. (*See e.g.,* Notice of Consents to Join, Docs. 55-63, 65, 68, 70-71, 76). Nevertheless, because an FLSA claim cannot be released without (1) court approval, or (2) the United States Department of Labor administering the settlement, litigants typically seek court approval before dismissing their claims with prejudice. *See, e.g., Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, at *7 (D. Utah Sept. 30, 2015).

Review of a settlement under the FLSA is different than Rule 23(e). Courts only review the proposed settlement to determine if it "is fair and reasonable resolution to a bona fide dispute over FLSA provisions." *See, e.g., Chappell v. Copper View Animal Hosp.,* No. 1:17-MC-52, 2017 WL 5172392, at *2 (D. Utah May 26, 2017); *Robles v. Brake Masters Sys.,* 2011 U.S. Dist. LEXIS 14432, at *51 (D.N.M. Jan. 31, 2011) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The settlement here easily passes this test. As discussed above, the parties have several disputes about the law and its application in this case. Moreover, the parties and their counsel believe this is a fair and reasonable settlement, as confirmed by the response from the Class.

### 3. *Notice Provided to Class Members was Proper and Reasonable*

The Notice provided to Class Members fulfilled the requirements of due process and Rule 23 and was thus proper and reasonable. To satisfy due process, notice is required to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager*, 854 F.3d at 1171. The due process standard does not stand alone but "is coextensive with the requirements of Fed. R. Civ. P. 23(c)(2), which states that class-action notice must be 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Id*. United States mail is an endorsed method to prove notice to class members, and notice by email is also an accepted method. *Id*. at 1173; *Sobolewski v. Boselli & Sons, LLC*, 2017 U.S. Dist. LEXIS 170657, *7-8 (D. Colo. Oct. 16, 2017).

In this case, notice was not only reasonable, it was incredibly effective, with over 99.99 percent of the Class receiving actual, direct notice of the settlement. To date, as explained below, there remain only three Class Members out of 1,231 for whom – despite extensive and more than reasonable efforts to locate them – it remains uncertain that they have been located and provided with notice of the Settlement. (Ex. 2 at ¶ 14).

Class Counsel hired Simpluris, the same administrator who distributed the prior FLSA class certification notice, to provide Notice by direct mail and by email. This Notice Plan was previously found reasonable by the Court and should be found reasonable again. Since the parties' Settlement Notice Plan was essentially identical with the collective action certification Notice Plan, the Settlement Notice Plan is equally reasonable and the best practicable means of notifying Class Members of the Settlement.

Simpluris conducted a National Change of Address Database search and employed more advanced searches when mail was returned as undeliverable. (*See id.* at ¶¶ 7, 9-13).

Pursuant to the Court's Preliminary Settlement Approval Order on March 28, 2019 (Doc. 102), Notice was sent to all 1,231 Class Members. (*Id.* at ¶ 8). Only 58 were returned. (*Id.* at ¶ 9). Of those, 54 were resent pursuant to forwarding addresses or skip trace searches. (*Id.*). Ultimately, only four individuals remained undeliverable. (*Id.*) But Simpluris didn't stop there. Simpluris performed an additional skip trace, pulled reports from an Expended Person Search, and called looking for them. (*Id.* at ¶ 10). After that helped them reach one of the individuals, Simpluris then engaged a private investigation service to attempt to find the last three and are awaiting the results. (*Id.*)

The Notice informed Class Members in plain English about the consequences of participating in, and opting out of, the Settlement. It disclosed the key terms of the Settlement, including the amount of the Gross Settlement, all payments to be made from the Gross Settlement Amount and Net Settlement Amount (and how the payments from the Net Settlement Amount will be calculated), as well as the nature and extent of the release of claims, the opt-out and objection processes. (*See* Doc. 98, Ex. 2). As such, the approved Notice provided to Class Members satisfied due process and Rule 23 requirements and should be approved as proper and reasonable.

### 4. *The Class Should Be Finally Certified for Settlement Purposes*

Plaintiffs' Counsel additionally seeks final certification of the Settlement Class for purposes of granting final approval of the Settlement. This Court granted preliminary certification to the Settlement Class March 28, 2019 (Doc. 102), and the propriety of that determination has not changed. The Settlement Class should receive final certification because it satisfies the requirements of Rule 23(a) of numerosity, commonality, typicality, and adequacy, as well as those under 23(b)(3) of predominance and superiority.

(1) Rule 23(a)

The first requirement under Rule 23(a) is that the Class is so numerous that joinder of all members would be "impracticable." *Coleman v. Recontrust Co.*, 2012 U.S. Dist. LEXIS 53928, at *8 (D. Utah 2012). Numerosity is generally found when a class includes 40 or more members. *Dilley v. Academy Credit, LLC*, No. 2:07CV301DAK, 2008 WL 4527053, at *2 (D. Utah Sept. 29, 2008). Here, the Settlement Class consists of approximately 1,231 members. Numerosity is easily met.

The second prerequisite is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality requires only one question of law or fact common to the entire class. *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010); *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 656 (D. Utah 2010). Here, common questions of both law and fact exist concerning the true nature of Medical Coders' work for Defendant. All Class Members contracted with Aviacode in substantially the same manner and worked a substantially similar job, satisfying this requirement. (*See* Doc. 81).

Third, the Named Plaintiff's claims must be typical of the Class. Fed. R. Civ. P. 23(a)(3). This element is satisfied if a named plaintiff's claims arise from the same events or practices giving rise to the claims of other class members and are based on the same law. *Miller,* 285 F.R.D. at 656. The test for typicality is whether other class members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct. *Id.* at 654. In this case, Mr. Desseaux's claims are typical of other Class Members, as each member of the proposed Class was a Medical Coder misclassified as an independent contractor, not paid for all time worked, nor reimbursed for all business expenses. These claims are the same for Mr. Desseaux and every member of the Class and are subject to the same defenses. Typicality is thus satisfied.

The final requirement of Rule 23(a) is simply that the representative plaintiff will fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4). All this factor requires is that "the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185. Here, Mr. Desseaux's interests as Named Plaintiff are fully aligned with those of the Settlement Class, and no conflicts of interest, actual or potential, exist. He has also actively participated in the litigation and taken all necessary steps to fulfill his obligations to the Settlement Class.

Additionally, Class Counsel have demonstrated their qualifications, competence, and commitment to the Settlement Class through aggressively pursuing claims on behalf of the Class and seeing this case through resolution under difficult circumstances. They have extensive experience in class action litigation, including numerous wage and hour class action lawsuits under the FLSA and state law. (Ex. 1 at ¶ 2; *see also* Docs. 98-3, 4 and 5).

(2) Rule 23(b)(3)

Under Rule 23(b)(3), a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Menocal v. The GEO Group, Inc.,* 882 F.3d 903, 914 (10th Cir. 2018).

Whether Defendant wrongly classified Medical Coders as independent contractors rather than employees, which consequently violated state and federal wage and hour laws in how it compensated them, is the common issue presented in this action and predominates over any individual issue that may exist. A class action is also superior to other available methods for the fair and efficient adjudication of this controversy because it saves time, effort, and expense, and promotes uniformity among persons similarly situated since Defendant employed over a

thousand individuals as Medical Coders during the class period across the United States. This provides relief to Class Members without numerous separate trials on the same facts and risking potentially inconsistent adjudications and inefficiencies.

Accordingly, the Parties jointly request that the Court certify the Settlement Class pursuant to Rule 23(b)(3) for purposes of granting final approval of the Settlement.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask the Court for an Order granting final approval of the Settlement, to certify the Settlement Class for settlement purposes, and find that notice requirements were fulfilled. A Proposed Order granting final approval is submitted contemporaneously with this motion as Exhibit 3.

Dated: July 1, 2019

Respectfully submitted,

Eric D. Barton, Utah No. 6481
WAGSTAFF & CARTMELL LLP
4740 Grand Ave #300
Kansas City, MO 64112
Telephone: (816) 710-1100
Facsimile: (816) 531-2372
Email: ebarton@wcllp.com

 /s/ Jack McInnes
Jack McInnes (*pro hac vice*)
Kansas No. 21898, Missouri No. 56904
MCINNES LAW LLC
1900 West 75th Street, Suite 120
Prairie Village, KS 66208
Telephone: (913) 220-2488
Facsimile: (913) 273-1671
Email: jack@mcinnes-law.com

        Patrick G. Reavey, KS #17291
        (*pro hac vice*)
        Kevin C. Koc, KS #24953
        (*pro hac vice*)
        REAVEY LAW LLC
        Livestock Exchange Building
        1600 Genessee, Suite 303
        Kansas City, MO 64102
        Ph: 816.474.6300
        Fax: 816.474.6302
        Email: preavey@reaveylaw.com
        Email: kkoc@reaveylaw.com
        Website: www.reaveylaw.com

        **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 1st day of July 2019, I filed a true and correct copy of the foregoing motion via CM/ECF, which electronically served all counsel of record.

        /s/ Jack McInnes